UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RICHARD SAVOY,<br><br>                    Plaintiff,<br><br>     -against-<br><br>BOSTON PRIVATE FINANCIAL HOLDINGS INC., ANTHONY DECHELLIS, STEPHEN M. WATERS, MARK F. FURLONG, JOSEPH C. GUYAUX, DEBORAH F. KUENSTNER, GLORIA C. LARSON, LIZABETH H. ZLATKUS, LUIS A. UBINAS, and KIMBERLY S. STEVENSON,<br><br>                    Defendants. | Case No.: _____<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, Richard Savoy, by Plaintiff's undersigned attorneys, for this complaint against Defendants, alleges upon personal knowledge with respect to Plaintiff, and upon information and belief based upon, *inter alia*, the investigation of counsel, as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1.      This is an action brought by Plaintiff against Boston Private Financial Holdings, Inc. ("Boston Private" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9.  Plaintiff's claims arise in connection with the proposed acquisition of Boston Private by SVB Financial Group ("SVB

Financial").

2.      On January 4, 2021, Boston Private and SVB Financial entered into an agreement and plan of merger (the "Merger Agreement"), pursuant to which Boston Private will merge with and into SVB Financial, with SVB Financial continuing as the surviving company (the "Proposed Transaction").

3.      Pursuant to the terms of the Merger Agreement, Boston Private's common stock shareholders will be entitled to receive $2.10 in cash (the "Cash Consideration") and 0.0228 shares of SVB Financial common stock (the "Exchange Ratio" and, together with the Cash Consideration, the "Merger Consideration") for each share of Boston Private common stock that they own.  Based on SVB Financial's trading price on December 31, 2020, the last trading day before the public announcement of the signing of the Merger Agreement, the Merger Consideration was worth approximately $10.94 per share of Boston Private common stock.

4.      On or about February 11, 2021, in order to convince Boston Private's public common stockholders to vote in favor of the Proposed Transaction, the Defendants authorized the filing of a materially incomplete and misleading Form S-4 Registration Statement (the "Registration Statement") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

5.      In particular, the Registration Statement contains materially incomplete and misleading information concerning the background of the Proposed Transaction and the valuation analyses performed by Boston Private's financial advisors, Morgan Stanley & Co. LLC ("Morgan Stanley" or the "Financial Advisors") regarding the Proposed Transaction.

6.      The Proposed Transaction is expected to close "in the middle" of 2021 and the special meeting of the Company's shareholders to vote on the Proposed Transaction will be scheduled in the coming weeks.  Therefore, it is imperative that the material information that has been omitted from the Registration Statement is disclosed prior to the special meeting, so Plaintiff can properly exercise

all corporate voting rights.

7.     For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Boston Private's public common stockholders sufficiently in advance of the upcoming shareholder vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

9.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice.  "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985).  "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

10.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact

business in this District.  Indeed, Boston Private's common stock trades on the Nasdaq Global Select Market ("Nasdaq"), which is headquartered in this District.  *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

11.     Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Boston Private common stock.

12.     Defendant Boston Private is a Massachusetts corporation headquartered in Boston, Massachusetts and the bank holding company of Boston Private Bank & Trust Company, a Massachusetts trust company.  Boston Private's common stock trades on the Nasdaq under the ticker symbol "BPFH."

13.     Defendant Anthony DeChellis ("DeChellis") is, and has been at all relevant times, the Company's Chief Executive Officer and a director of the Company.

14.     Defendant Stephen M. Waters ("Waters") is, and has been at all relevant times, the Chairman of the Board of Directors of the Company.

15.     Defendant Mark F. Furlong ("Furlong") is, and has been at all relevant times, a director of the Company.

16.     Defendant Joseph C. Guyaux ("Guyaux") is, and has been at all relevant times, a director of the Company.

17.     Defendant Deborah F. Kuenstner ("Kuenstner") is, and has been at all relevant times, a director of the Company.

18.     Defendant Gloria C. Larson ("Larson") is, and has been at all relevant times, a director of the Company.

19.     Defendant Kimberly S. Stevenson ("Stevenson") is, and has been at all relevant times, a director of the Company.

20.     Defendant Luis A. Ubinas ("Ubinas") is, and has been at all relevant times, a director of the Company.

21.     Defendant Lizabeth H. Zlatkus ("Zlatkus"), is and has been at all relevant times, a director of the Company.

22.     The Defendants identified in paragraphs 13 through 21 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with the Company, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**I.      Background of the Company and the Proposed Transaction**

23.     Boston Private is a publicly traded Massachusetts corporation headquartered in Boston, Massachusetts that acts as the bank holding company for Boston Private Bank & Trust Company, a Massachusetts trust company whose deposits are insured by the Federal Deposit Insurance Corporation ("FDIC").   Boston Private offers a full range of banking and wealth management services to high net worth individuals, families, businesses, and select institutions through two reportable segments: (a) Private Banking, and (b) Wealth Management and Trust. Boston Private's common stock trades on the Nasdaq under the ticker symbol "BPFH."

24.     Boston Private's "Private Banking" segment is comprised of the banking operations of Boston Private Bank and primarily operates in three geographic markets: New England, Northern California, and Southern California.  The Private Banking segment is principally engaged in providing banking services to high net worth individuals, privately-owned businesses and partnerships, and nonprofit organizations.  Boston Private's Private Banking segment is also an active provider of financing for affordable housing, first-time homebuyers, economic development, social services, community revitalization, and small businesses.

25.     Boston Private's "Wealth Management and Trust" segment is comprised of Boston

Private Wealth LLC ("Boston Private Wealth"), a registered investment adviser ("RIA") and wholly owned subsidiary of Boston Private Bank, and the trust operations of Boston Private Bank. The Wealth Management and Trust segment operates in New England, New York, Southeast Florida, Northern California, and Southern California, and offers planning-based financial strategies, wealth management, family office, financial planning, tax planning, and trust services to individuals, families, institutions, and nonprofit institutions.

26.     Prior to 2020, Boston Private had another reportable business segment: Affiliate Partners, which comprised registered investment advisers KLS Professional Advisors Group, LLC ("KLS") and Dalton, Greiner, Harman, Maher & Co., LLC ("DGHM"), as well as Anchor Capital Advisors, LLC ("Anchor"), and Bingham, Osborn & Scarborough, LLC ("BOS"). Boston Private completed the sale of its ownership interests in Anchor and BOS in 2018, and has integrated its KLS and DGHM business into its other reportable segments.

27.     Following these divestitures and the integration of new company leadership in recent years, Boston Private is positioned for continued, sustained economic growth in the coming years.

28.     Indeed, along with the financial results that Boston Private released in October 2020, less than three months before the Proposed Transaction was announced, Boston Private issued a press release entitled *Boston Private Reports Third Quarter 2020 Results*, which reaffirmed its current strategies, stating in part:

> "We are proud of the dedication and commitment shown by the Boston Private employees guiding our clients through this challenging environment," said Anthony DeChellis, CEO of Boston Private. "This quarter's financial results include a provision credit and continued strong new business in our Wealth Management & Trust business. We strengthened our capital and liquidity position to provide flexibility as we navigate the uncertain environment. We remain committed to our strategic objectives and believe that we are well positioned for long-term success."

29.     Thus, the Proposed Transaction comes at a time when Boston Private's future success was not fully reflected by its share price. The Proposed Transaction will "compensate" Boston Private's public stockholders with Merger Consideration that fails to adequately compensate them for

the intrinsic value of their shares.

30.     Despite Boston Private's intrinsic value and growth prospects, the Individual Defendants are agreeing to a merger that deprives Boston Private's public shareholders of the ability to partake in the Company's individual growth and instead cashes them out in part and dilutes the value of their shares with an inadequate interest in SVB Financial.  The Individual Defendants breached their fiduciary duties owed to Boston Private's shareholders by agreeing to the Proposed Transaction for the unfair Merger Consideration, and by allowing the unfair and flawed sales process to unfold in the manner that it did, which will cause Plaintiff and the Class to receive an inadequate Merger Consideration while Company insiders receive millions of dollars in severance payments and accelerated vesting of their restricted stock units.

## II.     The Announcement of the Proposed Transaction

31.     On January 4, 2021, SVB Financial and Boston Private issued a joint press release to announce the Proposed Transaction, which stated in part:

### SVB FINANCIAL GROUP TO ACQUIRE BOSTON PRIVATE, A LEADING PROVIDER OF WEALTH MANAGEMENT, TRUST AND BANKING SERVICES

SANTA CLARA, Calif. and BOSTON, Jan. 4, 2021  /PRNewswire/ -- SVB Financial Group ("SVB") (NASDAQ: SIVB), the parent of Silicon Valley Bank, and the bank of the world's most innovative companies and their investors, and Boston Private Financial Holdings, Inc. ("Boston Private") (NASDAQ: BPFH), the parent company of Boston Private Bank & Trust Company, a leading provider of integrated wealth management, trust and banking services to individuals, families, businesses and nonprofits, today announced that they have entered into a definitive merger agreement pursuant to which SVB will acquire Boston Private. Combined private bank and wealth management assets under management would be $17.7 billion, based on 9/30/20 figures.

Under the terms of the merger agreement, Boston Private shareholders will receive 0.0228 shares of SVB common stock and $2.10 of cash for each Boston Private share they own, representing a total consideration value of approximately $900 million based on SVB's closing stock price of $387.83 on December 31, 2020.

SVB's vision is to be the premier financial partner for the innovation economy, providing companies, entrepreneurs and their investors the services they need to succeed via four core businesses: commercial banking, investment banking, private banking and wealth management and fund management. The acquisition of Boston Private accelerates SVB's private bank and wealth management offering, strengthening SVB's overall platform and ability to fully meet the financial needs of its clients.

"Our clients rely on us to help increase the probability of their success – both in their business and personal lives," said Greg Becker, President and CEO of SVB Financial Group. "Boston Private's experienced and well-regarded team, robust service offering, and advanced technology platform will significantly bolster our private bank and wealth management capabilities and enhance our ability to offer products and services tailored to the needs of founders, executives and investors."

Boston Private provides a full spectrum of wealth, trust, and private banking services dedicated to helping clients simplify and strengthen their financial positions. With Boston Private's product suite and recently redesigned technology platform, SVB can expand its existing wealth management solutions, which include complex strategies to manage concentrated stock positions, to add tax planning, trust services, philanthropy and estate planning, while offering a significantly improved digital client experience. Boston Private's clients will benefit from greater access to investment opportunities and participation in the innovation economy, as well as the power of SVB's large balance sheet to support their borrowing needs.

"Together, SVB and Boston Private will be well-positioned to grow and scale our business, leveraging SVB's deep client relationships and broad reach across the innovation economy to capture a greater share of the wealth management market," said Anthony DeChellis, CEO of Boston Private. "We look forward to working together to support our clients as they pursue the goals they have for their businesses, families and legacies."

SVB and Boston Private currently serve clients in complementary major metropolitan markets with an approach that has earned both firms industry-leading Net Promoter Scores.

<u>Timing and Approvals</u>
The transaction has been unanimously approved by both companies' Boards of Directors and is expected to close in mid-2021, subject to the satisfaction of customary closing conditions, including receipt of customary regulatory approvals and approval by the shareholders of Boston Private.

<u>Advisors</u>
Goldman Sachs & Co. LLC acted as financial advisor to SVB in the transaction. Sullivan & Cromwell LLP served as legal counsel to SVB. Morgan Stanley & Co. LLC acted as financial advisor to Boston Private and Wachtell, Lipton, Rosen & Katz served as legal counsel.

III.     **The Preclusive Deal Protection Devices**

32.     To the detriment of the Company's public shareholders, the Individual Defendants agreed, in the Merger Agreement, to certain onerous and preclusive deal protection devices that operate conjunctively to make the Proposed Transaction a *fait accompli* and all but ensure that the Proposed Transaction is consummated and that no competing offers emerge for the Company.

33.     The Merger Agreement contains restrictive "no-shop" provisions that prohibit the members of the Board from soliciting proposals relating to alternative offers or business combinations.

34.     The "no-shop" provisions strictly prohibit, except under extremely limited circumstances, the Individual Defendants from engaging in discussions or negotiations relating to proposals regarding alternative acquisitions or business combinations

35.     Among other things, the "no-shop" provisions also require the Board to provide SVB Financial with written notice of any Acquisition Proposal, and further requires that the Board provide prior written notice of its intention to terminate the Merger Agreement due to receipt of a Superior Proposal so that SVB Financial may negotiate with Boston Private following SVB Financial's receipt of the notice and SVB Financial can adjust the terms and conditions of the Merger Agreement so that the Acquisition Proposal ceases to be a Superior Proposal.

36.     In addition, the Merger Agreement provides that the Company will be required to pay to SVB Financial a termination fee of $36,000,000.00 with respect to any termination under the No-Shop provisions of the Merger Agreement.

37.     Ultimately, these preclusive deal protection devices restrained and continue to restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company, and further restrain the Company's public shareholders' ability to disapprove the Proposed Transaction.

38.     Indeed, the Proposed Transaction was negotiated through a flawed and conflicted sales process pursuant to which Boston Private conducted insufficient outreach and steered the transaction to SVB Financial by accelerating the merger process and negotiating the merger during the coronavirus pandemic.

39.     The aggregate effect of the preclusive deal protection devices, viewed in light of the materially inadequate consideration offered for the Company's shares in the Proposed Transaction and the flawed and conflicted sales process pursuant to which the Proposed Transaction was negotiated, supports an inference that the Board was not acting in good faith in approving the terms of the Merger Agreement.

40.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that the Company's shareholders will continue to suffer absent judicial intervention.

## IV.     The Registration Statement Omits Material Information

41.     On or about February 11, 2021, in order to convince Boston Private's public common stockholders to vote in favor of the Proposed Transaction, the Defendants authorized the filing of the materially incomplete and misleading Registration Statement with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

42.     The special meeting of Boston Private's shareholders to vote on the Proposed Transaction is forthcoming.  The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Registration Statement misrepresents or omits material information that is necessary for the Company's shareholders to make an informed voting decision in connection with the Proposed Transaction.

43.     Specifically, the Registration Statement omits two types of material information: (i)

information regarding the background of the transaction, and (ii) information that renders the Company's Financial Advisors' fairness analysis materially false, misleading, or incomplete.

      A.      **The Registration Statement Omits Material Information Regarding the Background of the Transaction**

     44.     Page 45 of the Registration Statement states that Defendant DeChellis engaged in "informal discussions" with potential counterparties to a potential strategic transaction or partnership with Boston Private and that "none of these financial institutions ever made any proposal to acquire or enter into a strategic business combination with Boston Private, either during the pre-COVID-19 period or at any time thereafter" but does not disclose (i) whether any of these "discussions" led to the execution of standstill agreements and, if so, (ii) whether those standstill agreements included "Don't Ask, Don't Waive" ("DADW") obligations that would preclude these potential counterparties from making an unsolicited acquisition proposal.  If potential counterparties are bound by a DADW provision, then the purported "fiduciary out" clause is effectively illusory.  *See Koehler v. NetSpend Holdings, Inc.*, C.A. No. 8373-VCG, 2013 Del. Ch. LEXIS 131, at *71-72 (Del. Ch. Ct. May 21, 2013).

     45.     Page 51 of the Registration Statement fails to disclose material information regarding the discussions between Defendant DeChellis and the Chief Executive Officer of Company A, including how Defendant DeChellis responded to Company A's oral "speculation" that Company A would be open to acquiring Boston Private in a "general price range of around $10.50 per share." Indeed, the Registration Statement states that "Company A's Chief Executive Officer did not propose any specific transaction terms" and "no proposal or indication of interest was ever provided by or on behalf of Company A" but it does not disclose whether or not Defendant DeChellis advised Company A's Chief Executive Officer that Boston Private would consider such a proposal.  Thus, it is impossible to know whether Company A did not submit a formal proposal or indication of interest because Defendant DeChellis steered the transaction away from Company A's unsolicited inquiries,

especially as the Board was apparently concerned of about "a leak or market rumors."

46.    Page 47 of the Registration Statement states that Morgan Stanley was "financial advisor to Boston Private" on July 21, 2020 when Morgan Stanley "reviewed and discussed various potential strategic alternatives that Boston Private could consider with the goal of enhancing value for Boston Private shareholders."  However, Page 66 of the Registration Statement states that during the two-year period leading up to the issuance of the Fairness Opinion, Morgan Stanley "did not receive any fees for providing investment banking services to Boston Private other than in connection with the transactions contemplated by the merger agreement" but did receive aggregate fees of $2 million to $4 million from SVB Financial.  Thus, the Registration Statement plainly fails to disclose when Morgan Stanley first disclosed its potential conflict of interest to the Board and whether the Board was aware of this conflict as early as July 21, 2020 when Morgan Stanley first began to steer the transaction towards SVB Financial.

B.    **The Registration Statement Omits Material Information Regarding the Fairness Analysis**

47.    The Registration Statement also omits material information regarding the Company's Financial Advisors' Fairness Opinion and the various valuation analyses that the Company's Financial Advisors performed to render the opinion but fails to provide enough information regarding the necessary data, support for conclusions, or the existence of, or basis for, the underlying assumptions that underpin the fairness opinion.  Specifically, the Registration Statement does not disclose enough information regarding the financial projections, inputs and assumptions for various financial valuations.  Without this information, shareholders cannot replicate the analyses, confirm the valuations, evaluate the Financial Advisors' opinion that the Merger Consideration is fair, or accurately assess the reliability of the Fairness Opinion.  The informative value of the Fairness Opinion is not in its conclusions, but in the valuation analyses that support them.  Thus, the key inputs, which are intrinsically baked into those conclusions, must also be fairly disclosed.

48.     First, with respect to the Boston Private Projections beginning on Page 67, the Registration Statement fails to clearly state whether the Total Revenue, Net Income, Diluted Earnings per Share, and Risk-Weighted Assets projections reflect the projections that were provided by Boston Private Management in September 2020 or reflect the projections as updated in November 2020 that were presented to the Boston Private Board on November 18, 2020.  *See* Registration Statement at 49-50.

49.     With respect to the Company Projections, the Registration Statement also fails to disclose (i) Projected book value per share, (ii) Projected dividends per share, and (iii) Any line-items used to derive Net Income and Diluted Earnings per Common Share.

50.     The Company Projections also fail to disclose the pro-forma financial effects of the merger other than the run-rate cost savings on Boston Private's expected non-interest expenses and SVB Financial's costs in estimated pre-tax restructuring costs relating to growth investments and integration.  Thus, the Registration Statement fails to disclose the projected value of other combined company synergies such as any strategic implications or other financial and operational benefits that Boston Private and SVB Financial anticipate.  *See* Registration Statement, 69.

51.     With respect to Morgan Stanley's *Boston Private Public Trading Comparables Analysis* beginning on Page 60, the Registration Statement fails to disclose: (i) Morgan Stanley's basis and rationale for deeming the selected companies as having "business that may be considered similar to Boston Private's," including whether Morgan Stanley excluded any companies that otherwise meet the objective parameters because their business was not "considered similar," (ii) the individual multiples for each of the selected companies, (iii) whether the "Selected Companies' Top Quartile" and "Selected Companies' Bottom Quartile" results describe the median multiples for the selected companies within the Top Quartile and Bottom Quartile, (iv) the full rationale and basis that Morgan Stanley employed and relied on in selecting a range of earnings per share multiples for Boston

Private of 11.0x to 13.0x for 2021E and 9.0x to 12.0x for 2022E, when these reference ranges appear to place Boston Private in line with the selected companies in the bottom quartile rather than near the median, and (v) Morgan Stanley's full rationale and basis for applying a 15% to 25% *discount* to the value implied by the Price / Tangible Book Value versus 2022 Return on Tangible Common Equity regression analysis.

52. With respect to Morgan Stanley's *SVB Financial Public Trading Comparables Analysis* beginning on Page 63, the Registration Statement fails to disclose: (i) Morgan Stanley's basis and rationale for deeming the selected companies as having "business that may be considered similar to SVB Financial's," including whether Morgan Stanley excluded any companies that otherwise meet the objective parameters because their business was not "considered similar," (ii) the individual multiples for each of the selected companies, (iii) whether the "Selected Companies' Top Quartile" and "Selected Companies' Bottom Quartile" results describe the median multiples for the selected companies within the Top Quartile and Bottom Quartile, (iv) the full rationale and basis that Morgan Stanley employed and relied on in selecting a range of earnings per share multiples for SVB Financial of 14.0x to 22.0x for 2021E and 12.0x to 20.0x for 2022E, when these reference ranges appear to place SVB Financial outside the reference ranges of the selected companies, and (v) Morgan Stanley's full rationale and basis for applying a 15% to 60% valuation *premium* to the value implied by the Price / Tangible Book Value versus 2022 Return on Tangible Common Equity regression analysis.

53. With respect to Morgan Stanley's *Boston Private Dividend Discount Analysis* and *SVB Financial Dividend Discount Analysis* beginning on Pages 62 and 64, respectively, the Registration Statement fails to disclose: (i) the respective dividend amount projections for each of Boston Private and SVB Financial, (ii) Morgan Stanley's full basis and rationale for applying a discount rate range of 8.5% to 10.5% for Boston Private and a discount rate range of 7.2% to 9.2%

for SVB Financial, (iii) whether the 1.0% opportunity cost of cash is incorporated into the stated discount rate range or was applied on top of the stated discount range, (iv) Morgan Stanley's rationale and basis for calculating terminal values for Boston Private and SVB Financial by applying a range of 2025 estimated earnings of 11.0x to 13.0x and 14.0x to 22.0x, respectively, and (v) full sensitivity tables that summarize the implied valuations across the full range of assumptions.

54.     If a proxy discloses financial projections and valuation information, such projections and valuations must be complete, accurate, and honest.  The question is not simply whether there is a duty to speak, but also whether there may be liability for not having spoken enough.  With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths.  *See Campbell v. Transgenomic, et al.*, No. 18-2198 (8th Cir., March 1, 2019) (noting that "half-truths" are actionable misrepresentations under securities laws and collecting cases).  Accordingly, Defendants have disclosed some of the information related to the projections, assumptions, and inputs relied upon by Defendants' financial advisors, but have omitted crucial line items, reconciliations, and other information.  Thus, Defendants' omission renders the projections disclosed in the Registration Statement misleading.

55.     In sum, the omission of the above-referenced information renders the Registration Statement materially incomplete and misleading, in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the upcoming shareholder vote concerning the Proposed Transaction, Plaintiff will be unable to make an informed decision regarding whether to vote his shares in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9)**

56.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

57.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

58.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

59.     The omission of information from a proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

60.     Defendants have issued the Registration Statement with the intention of soliciting the Company's common shareholders' support for the Proposed Transaction.  Each of the Individual Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding the valuation analyses performed by the Company's Financial Advisors in support of its fairness opinion.

61.     In so doing, Defendants made untrue statements of fact and/or omitted material facts

necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

62.     The Individual Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Registration Statement states that the Company's Financial Advisors reviewed and discussed its financial analyses with the Board, and further states that the Board considered the financial analyses provided by the Company's Financial Advisors, as well as its fairness opinion and the assumptions made and matters considered in connection therewith.  Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement.  The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review the Company's Financial Advisors' analyses in connection with their receipt of the fairness opinions, question the Company's Financial Advisors as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

63.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

64.     The Company is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Registration Statement.

65.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote.  Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

66.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

67.     The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did

influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

68.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

69.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.   The Registration Statement contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.   They were thus directly involved in preparing this document.

70.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction.   The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.   The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

71.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

72.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.   By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.   As a direct and proximate

result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

73.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Registration Statement;

B.     Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

//

//

//

//

Dated: February 18, 2021

**OF COUNSEL:**

**ADEMI LLP**
Guri Ademi
Jesse Fruchter
3620 East Layton Avenue
Cudahy, Wisconsin 53110
Tel: (414) 482-8000
Fax: (414) 482-8001
Email: gademi@ademilaw.com
       jfruchter@ademilaw.com

*Attorneys for Plaintiff*

**MONTEVERDE & ASSOCIATES PC**

*/s/ Juan E. Monteverde*
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel:(212) 971-1341
Fax:(212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*